If it pleases the Court, I am here representing Willie Mock on appeal this morning and adopt and incorporate the opening and reply briefs. And what I'm asking this Court to look at, on behalf of Mr. Mock, is the lack of evidence to support a verdict of guilt for knowingly and intentionally attempting to manufacture methamphetamine and for knowing and intentionally creating a substantial risk of harm to human life. I will be brief because I think that the documents that have been submitted clearly set out the facts in this case. There is no dispute that there was a fire in the apartment building where Mr. Mock resided. There is no dispute whatsoever that Mr. Mock was ultimately treated. However, it is not necessarily connected to, by virtue of the evidence, he was treated for burns on the back of his hand. The government will have you believe that because 14 witnesses testified that there is sufficient evidence to support this conviction. Part of the problem ---- Sotomayor Let me just tell you what evidence I'm thinking about, and you tell me why this doesn't work. A number of items were found in his apartment which are associated with the manufacture of methamphetamine, including some of the jars and connecting tubes, including the chemicals, including the baggies, dozens of different items. There was also his T-shirt that included some trace elements that are associated with methamphetamine and also showed that it had been burnt. And trace amounts of meth were found on various items in the apartment. I guess I have difficulty seeing why that isn't at least very strong circumstantial evidence that he was attempting to manufacture this drug in his apartment. In response to that, Your Honor, you're absolutely correct that those items were found. However, he was indicted for a specific operation or the intended production of meth on the date of March 30, 2002. There is no evidence that connects those specific items with the trace residue to a specific point in time. And that is testified to by the experts. The fire expert couldn't point to the origin of the fire. There is a dispute that those items were not in the kitchen. There were even ---- Let me just stop you for one second. The indictment says that the manufacture occurred on or about March 30th. That is correct. The specific time is not an element of the crime. So if it was March 29th, the evidence would suffice. There was not. When were these items found? The items were found at the time of the fire and during the investigation afterwards. But there was testimony that the items could have been there for over a year. There was testimony that there were latent fingerprints not only belonging to Mr. Mock, but also to another individual and two other unidentifiable fingerprints. And the fingerprint expert couldn't testify how long they had been there either. But the fire occurred on March 30th. Yes, it did. Okay. And I guess I'm still at a loss to understand why there isn't circumstantial evidence that the vapors that caused that fire were ones used in cooking methamphetamine. Well, I'm not sure this answers your question. But there was testimony on cross-exam by the experts that the items that were found were also items that could be used in the normal course of everyday operation and not necessarily for a meth. The question isn't whether there's a possible innocent explanation. The question is whether it's rational to conclude that there's a non-innocent explanation. And so I guess if there are two possible explanations for the same evidence, one guilt and one innocence, the jury's entitled to pick one, isn't it? Well, I think the jury's entitled to pick one. But if you read particularly the brief of the government, I actually wrote it down. There is a minimum of four or five could-haves in terms of their testimony. There could have been a meth operation. There could have been residue that was a result of the operation. And the jury, based on the could-haves, concluded that, in their minds, beyond a reasonable doubt, there was. So what is it that causes us to say that was an irrational conclusion? Well, Your Honor, what Mr. Mock is contending is that you've got neighbors that heard what they thought was an explosion. You also have a neighbor that said it sounded like a TV came crashing on the floor. You also have a flash fire and you have a fire department investigator saying that he doesn't know what caused the fire. You also have facts from which you could draw reasonable inferences that it was not the result of a meth, an attempt to manufacture meth. But is that the standard that we're applying? Pardon me?  inferences that point to a different result. And the single proposition is that the question put to us, is it possible to draw reasonable inferences from the evidence that point to a different result? I mean, I think what Judge Graber has posed the problem here is that that's not our mission today. That's not the question we're asked to answer. And it may well have been the case that the jury could have heard that same evidence and said, not guilty. But that's not what it said. And the question put to us is whether or not any rational trier of fact could have reached that result, or was that result one that simply could not be supported by this evidence? Your Honor, I think that the position of Mr. Mock is that it is an unreasonable conclusion for the jury to infer, based on the evidence that was presented, that Mr. Mock was attempting to manufacture meth. There is not any real showing of culpable intent. The cases that the government cites, i.e., Harper, Buffington, Still, those talk about what, in fact, is an attempt and what isn't. And if you look closely at those facts, there's an extreme contrast between the facts here. The facts here were equivocal. They were even testified to as equivocal, might have been. They were tentative. And I don't think that it was a reasonable inference for them to conclude, beyond a reasonable doubt, that based on the facts that there was attempted meth manufacturing going on. One of the facts that stood out so very clearly, and then I'd like to reserve two minutes if I can talk quickly enough, was the testimony regarding the Coleman camp. And the fire forensic expert testified that if there was a cook going on, it would have been pretty difficult, because you can't cook with simple residues, and residue is just an immeasurable amount, and that in his experience, a cook had to involve a cook. By that, I mean the operation of attempting to manufacture. Had to, you had to have significant amounts, significant amounts of all of these items. And the other thing is that if the Coleman can was upright and closed, that it would be, according to the expert, nigh on to impossible to, if there was an explosion during a cook, to put the can back down and put the lid back on top of it and have it remain upright. And there was no evidence whatsoever, as in a typical cook, of meth being, excuse me, of liquid being poured from the Coleman can into an additional container where the ingredient would cause the vapor to be exploded. They couldn't find any of that, and there was no finding of meth outside afterwards or whatever. And may I please reserve the next minute, 24 seconds? Yes, Your Honor. Thank you. Thank you. Mr. Smart? Thank you, Your Honors. May it please the Court, Russ Smoot of the United States. The Court, judging by the questions, the Court is well familiar with the standard of review in this type of case and the challenge of the sufficiency of the evidence. I'd like to very briefly just go ahead and reference a case that I apologize was not referenced in the briefing process, but it is United States v. Taylor, and that's 716F2-701. And the reason why I reference that is because in an attempt, in an attempt case to prove that there's been a culpable intent and a substantial step towards that intent. Now, the cases that have been referenced, Harper, Steele, Buffington, they talk about attempted bank robberies. And while they provide guidance to the Court as to the two elements that need to be proven and to specific finer definitions of substantial step, they are, in fact, factually different because they are bank robbery cases. Why don't you just spend a moment and give us five or ten pieces of best evidence that you think suffice to allow the jury to come to the conclusion that it came to? First, the defendant had, within his possession, had accumulated not only materials to manufacture methamphetamine, he had the equipment to manufacture methamphetamine, he had there were traces of pseudoephedrine, which is the ingredient to methamphetamine. There were traces of methamphetamine within his residence. There was not only included within the materials were the flammable materials, as well as the cutting agent, the most common cutting agent to make methamphetamine. There was a flash fire. There was testimony presented of the methamphetamine process, of how methamphetamine is made and how heat is used to make methamphetamine. There was a flash fire at 4 o'clock in the morning. The fire investigative expert, although he did on cross-examination say that he could not pinpoint an origin or originating point, a term of art, of the fire, he did opine that the fire was caused by the unintentional ignition of flammable gases. The scene of the fire, according to not only fire investigators, but meth lab investigators and investigators, had all the signs of a meth lab. And the defendant himself, there was a T-shirt that was found that had evidence of iodine, red phosphorus, which are ingredients of methamphetamine. It also had burn marks on it and what appeared to be human skin, burnt human skin on the T-shirt. The defendant was observed fleeing the apartment shortly after neighbors had heard or had noticed that a fire was coming from the window. The defendant did not return to the apartment and was, in fact, arrested three days later at a traffic stop. As I referenced United States v. Taylor earlier, I should go back. Interestingly, in Harper it says that this court, in determining what a substantial step is, should look to precedent. United States v. Taylor was a case to where a defendant was convicted of the attempted manufacture of amphetamines. What happened was the defendant had accumulated all the materials, had inquired about equipment to manufacture amphetamine, and had made some statements, not about manufacturing amphetamine, but had made statements about getting into a shootout with police. It didn't really have to do with the intent, but he had made those statements. A search warrant was done on the defendant's residence in which all these materials were found, and no traces of a search warrant and no evidence of a lab that was happening at that moment was found. Yet this court upheld the jury's determination or the conviction based on the sufficiency of the evidence challenged. And in fairness to the case, the attempt at conviction was ultimately overturned, reversed due to an inadequate jury instruction. But concerning the sufficiency of the evidence, this court affirmed that conviction. Thank you. Unless there's any other questions, the United States would just respectfully request this court to affirm. How about the risk to humans? Well, Your Honor, the United States, I would submit that the United States theory of the case was that this was, that the fire occurred in the process of manufacturing methamphetamine. The fire occurred in a residential four-plex type apartment dwelling in which other persons were sleeping at 4 o'clock in the morning. Evidence was presented by the other residents that they had been present in the apartment at the time that this manufacturing process went awry, and they've still not been able to determine when the explosion and fire started. So consequently, ultimately, the attempt to manufacture methamphetamine, where it was done, at the time it was done, with other people, innocent persons present in the same, I believe, wooden apartment dwelling, did in fact create, or evidence of that was presented to the jury, and the jury determined, in fact, that that was not the case. That was a substantial risk to human life. Thank you, counsel. Thank you. And, Ms. Glenn, you have some rebuttal time remaining. I'd like to point out that it was the government that cited all of the cases in order to support their position that related to the robbery and the attempt charges, with no mention of Taylor, to which I would have responded in reply. In answer to your question about the harm, substantial risk of harm to other humans, it is true that those people were evacuated. They were evacuated because of smoke, and then they were able to return to the dwelling, which I don't think the judgment was drawn that there was an intentional knowing. Does the statute require that? The statute requires intentional knowing, intentionally and knowingly creating a substantial risk to human life. At least that is the charge, the verbiage of the charge against the gentleman. Do you think that means they have to intend the harm or only intentionally creating the risk? I think that it's my question. It's intentionally or knowingly create a substantial risk of harm to humans. As long as he intentionally did the act and knew that it was risky to the lives of others, that would suffice. Yes. Number two absolutely is dependent on number one. And finally, number two also, the reason this case is so critical is it exposed him to a 10-year enhancement with a $31,000 restitution. And finally, in conclusion, I would just like to say that possession is not enough to prove intent as to what went on. That simply is not enough to prove the attempt. Do you have any other questions? I think not. Thank you, counsel. Thank you very much. The case just argued is submitted.
judges: Hug, Graber, Clifton